ROBERT S. BREWER, JR.
United States Attorney
BRUCE C. SMITH
Assistant U.S. Attorney
California State Bar No. 078225
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8266
E-mail: bruce.smith@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. '19CV2096 BEN BGS |
|---|---|
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | |
| $102,561.00 IN U.S. CURRENCY, | |
| Defendant. | |

By way of complaint against the defendant $102,561.00 IN U.S. CURRENCY ("$102,561 in currency"), plaintiff UNITED STATES OF AMERICA alleges:

1. This Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355(a) and Title 21, United States Code, Section 881(a)(6), because the defendant $102,561 in currency constitutes money furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to an exchange for controlled substances in violation of Chapter 13 of Title 21, United States Code.

2. Venue is proper in this district pursuant to Title 28, United States Code, Section 1395 because the defendant $102,561 in currency was found in this district.

3. On June 26, 2019, in the Southern District of California, at the San Diego International Airport ("SDIA"), members of the San Diego Integrated Controlled substances Task Force ("NTF") Commercial Interdiction Unit were on duty, seeking to

USAO:2019v00277:BCS/bfs

intercept and seize controlled substances and proceeds from the sales of controlled substances passing though the airport.

    A.    The Task Force officers ("TFO") were trained and experienced, and knew persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to distribute controlled substances throughout the United States.

    B.    The TFOs were trained and experienced, and knew persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA, and the aircraft which arrived and departed there, to transport drug sales proceeds and funds to be used to purchase drugs in and out of San Diego. Those proceeds and funds were usually in the form of United States currency.

    C.    The TFOs were trained and experienced, and knew persons engaged in the commercial interstate distribution of controlled substances frequently used couriers to transport controlled substances, drug sales proceeds, and funds to be used to purchase drugs in and out of San Diego. SDIA and the aircraft that arrived and departed there are relied upon as a means of sending and receiving such couriers.

4.    On or about June 26, 2019, NTF Task Force officers and Drug Enforcement Administration ("DEA") agents assigned to SDIA learned YOUNES YASSEIN ("YASSEIN") was traveling from Nashville, Tennessee to SDIA aboard Southwest Airlines Flight 2592.

    A.    YASSEIN was traveling on a one-way ticket, purchased within a few hours of the scheduled departure time.

    B.    YASSEIN used a false name and false date of birth when purchasing his one-way ticket to San Diego, California.

    C.    YASSEIN thereby caused Southwest Airlines to issue YASSEIN a one-way boarding pass to San Diego, California under a false identity.

    D.    YASSEIN also had a documented history of identifying himself to law enforcement as "Lewis Adam."

   E. YASSEIN, a resident of San Diego, California, did not purchase a round trip ticket for his travel to and from Nashville, Tennessee.

   F. YASSEIN was traveling with no checked luggage.

   G. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers.  They knew the purchase of a cross-country, one-way airline flight ticket even a day or two before departure is unusual, and can be indicative the traveler is an illegal drug or drug currency courier.

   H. The TFOs and DEA agents knew the general traveling public purchases round trip airline tickets weeks or even months in advance of the scheduled departure date. Advance purchase of round trip airline tickets results in lower fares for the traveler. Purchasing a one-way airline ticket even a week in advance of departure all but guarantees one will pay the highest fare.

   I. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers.  They knew illegal drug and drug currency couriers often times do not know when drugs or currency will be available for transport until the last minute.  The nature of illegal drug trafficking, and its uncertainties, often compel couriers and their employers to purchase airline tickets close to the departure date.

   J. The TFOs and DEA agents were trained and experienced, and knew the use of false identities was a means used by criminals to avoid detection by law enforcement, and a means of insulating themselves from their documented criminal history.

   K. The TFOs and DEA agents were trained and experienced, and knew that San Diego is a primary source region for controlled substances cultivated and manufactured on the west coast of the United States, Latin America, and elsewhere.

   L. The TFOs and DEA agents were trained and experienced, and knew controlled substances cultivated and manufactured on the west coast, in Latin America, and elsewhere were sent and distributed for resale from source regions, such as San Diego and the Southern District of California, to all points north and east within the United States.

The Nashville, Tennessee region was a known destination market for controlled substances sourced from San Diego and the Southern District of California.

5. Prior to YASSEIN'S arrival aboard Southwest Airlines flight 2592, TFOs at the Nashville, Tennessee airport advised the TFOs at SDIA that YASSEIN was encountered by Transportation Security Agency ("TSA") officers, and noted to be traveling with a very large amount of U.S. currency.

    A. A TSA supervisor alerted a Nashville Airport Department of Public Safety officer YASSEIN was at the TSA screening checkpoint with a very large amount of currency.

    B. Officer Hardy-Moore responded to the TSA screening checkpoint.

    C. The TSA supervisor told Officer Hardy-Moore the currency YASSEIN was carrying was wrapped in rubber bands, and was mostly in the $20.00 denomination.

    D. YASSEIN was uncooperative, argumentative, and repeatedly told Officer Hardy-Moore YASSEIN did not have to speak with him.

    E. Soon, Detective Kessler arrived at the TSA screening checkpoint, and attempted to speak with YASSEIN.

    F. As Detective Kessler attempted to engage YASSEIN in conversation, YASSEIN became more and more agitated.

    G. YASSEIN was permitted to board Southwest Airlines flight 2592 to San Diego.

    H. After YASSEIN boarded the aircraft, Detective Kessler discovered YASSEIN was traveling under a false name and false date of birth.

6. The SDIA Task Force officers reviewed official United States, state, and local criminal history data bases, and learned YASSEIN had a history of involvement in commercial distribution of controlled substances, and was involved in a recent seizure of a large amount of U.S. currency.

7. On March 7, 2018, in the Southern District of California, United States Border Patrol ("USBP") agents conducted an investigative stop of a 2005 Toyota 4Runner SUV

as the vehicle proceeded north on Interstate Highway 15, near Rainbow Road and Old Highway 395.

      A.    YASSEIN was the driver of the vehicle.

      B.    YASSEIN identified himself to the USBP agents as "Lewis Adam."

      C.    Inside the Toyota 4Runner, the USBP agents discovered and seized four (4) trash bags containing approximately 23.85 kilograms (52.47 pounds) of marijuana, a Schedule I Controlled Substance.

8.    On April 8, 2019, in the Southern District of California, San Diego Police Department ("SDPD") officers conducted a traffic stop in the Gaslamp District of a black Infinity sedan.

      A.    YASSEIN was the driver of the vehicle.

      B.    YASSEIN was accompanied by three (3) passengers.

      C.    Inside the Infinity sedan, the SDPD officers discovered and seized a loaded handgun and approximately $47,421.00 in U.S. currency.

9.    On June 26, 2019, just before 9:05 p.m., in SDIA Terminal One, the TFOs, DEA agents, and two (2) uniformed San Diego Harbor Police ("SDHP") officers prepared for the arrival of Southwest Airlines Flight 2592 and passenger YASSEIN.

      A.    At approximately 9:05 p.m., shortly after Southwest Airlines Flight 2592 landed, the TFOs and DEA agents, armed with a physical description of YASSEIN, identified him as he exited the jet way from Gate 8.

      B.    The TFOs and agents noted as YASSEIN exited the aircraft, he held a cellular phone in front of his body, and pointed out, in an attempt to video-record anticipated law enforcement activity in the terminal.

      C.    YASSEIN was pulling a green hard side roller bag with a black nylon duffel bag resting on top.

10.    TFO Fernandez and TFO Walton approached YASSEIN, identified themselves as law enforcement officers, and attempted to speak with him.

//

  A. YASSEIN continued to walk at a brisk pace, all the while using his cellular phone to video-record the TFOs and his surroundings.

  B. YASSEIN was agitated, argumentative, and loud.

  C. The TFOs explained to YASSEIN he was free to be on his way, but his luggage was being detained while the TFOs attempted to obtain a search warrant.

  D. TFO Henderson took custody of the roller bag and nylon duffel, and moved the luggage a few feet away from where YASSEIN was standing.

11. In YASSEIN'S presence, TFO Henderson, a trained and experienced controlled substance detection dog handler, used his trained and certified controlled substance detection dog, "Voodoo", to conduct an examination of YASSEIN'S roller bag and nylon duffel.

  A. TFO Henderson and Voodoo were trained and certified as a dog handler and controlled substance detection dog team.

  B. Voodoo was trained to display a behavior or "alert" when he encountered the scents or odors of a variety of controlled substances.

  C. TFO Henderson was trained and experienced in recognizing Voodoo's trained behaviors or alerts.

  D. When exposed to the roller bag and nylon duffel, Voodoo alerted to the presence of the scent of one or more controlled substances emanating from the luggage.

  E. TFO Henderson observed the alert, told the other TFOs of the alert, and explained its significance.

12. The TFOs repeatedly told YASSEIN he was free to leave, but his luggage was being detained while the TFOs attempted to obtain a search warrant for the luggage and its contents.

  A. YASSEIN became progressively more agitated, and walked toward TFO Henderson, Voodoo, and his luggage.

//

//

6

   B. YASSEIN became more and more aggressive, and at one point placed his left hand on TFO Henderson's chest and attempted to pull his luggage away from TFO Henderson.

   C. TFO Henderson, with one hand holding YASSEIN'S luggage and the other holding onto the leash of Voodoo, required the assistance of the two (2) uniformed SDHP officers to restrain the highly agitated and screaming YASSEIN.

   D. YASSEIN was detained for battery on a law enforcement officer, placed in handcuffs, and escorted to the nearby NTF office.

  13. On June 27, 2019, in the Southern District of California, TFO Henderson, an officer of the San Diego Police Department, obtained Search Warrant 61130, issued by a Judge of the Superior Court of the State of California, County of San Diego, authorizing TFO Henderson to examine the contents of YASSEIN'S green hard side roller bag and black nylon duffel bag.

  14. Acting under authority of the search warrant, TFO Henderson and TFO Walton opened the roller bag and nylon duffel, and examined their respective contents.

   A. Inside the nylon duffel were items of dominion and control under the names of YASSEIN and Lewis Adam.

   B. Inside the roller bag were, among other things, items of dominion and control under the name of YASSEIN, and a black nylon gear bag.

   C. Inside the black nylon gear bag were multiple bundles of U.S. currency.

   D. The bundles of U.S. currency were secured by rubber bands.

   E. The bundles of U.S. currency were made up of approximately 4,788 bills, in a variety of demoninations.

   F. The bundles of U.S. currency were combined, counted, and determined to be $102,561.00 in U.S. currency.

   G. The $102,561.00 in U.S. currency discovered in the black nylon gear bag is the defendant $102,561 in currency.

15. The TFOs and DEA agents had specialized training and were experienced in investigating illegal controlled substance traffickers and drug currency couriers. They knew illegal street drug sales were virtually always conducted as an exchange of drugs for currency.

    A. The most common denomination used in illegal street drug transactions was the $20.00 bill.

    B. Approximately 80% of the defendant $102,561 in currency was made up of $20.00 bills.

16. TFO Henderson, the trained and experienced controlled substance detection dog handler, and his trained and certified controlled substance detection dog, "Voodoo", conducted an examination of the defendant $102,561 in currency.

    A. When exposed to the defendant $102,561 in currency, Voodoo alerted to the presence of the scent of one or more controlled substances emanating from the currency.

    B. TFO Henderson observed the alert, and relayed it to the other TFOs in his presence.

17. The defendant $102,561 in currency was seized for forfeiture by the DEA as currency constituting proceeds of the purchase(s) of controlled substances, and money possessed with the intent to be furnished in exchange for controlled substances.

18. The defendant $102,561 in currency constitutes money furnished or intended to be furnished in exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

19. Alternatively, the defendant $102,561 in currency constitutes proceeds of, or proceeds traceable to, an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

20. Alternatively, the defendant $102,561 in currency was used or intended to be used to facilitate an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

21. As a result of the foregoing, the defendant $102,561 in currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 21, United States Code, §881(a)(6).

22. The defendant $102,561 in currency is presently deposited within the jurisdiction of this Court.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant $102,561 in currency, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: November 1, 2019

ROBERT S. BREWER, JR.
United States Attorney

s/ Bruce C. Smith
BRUCE C. SMITH
Assistant U.S. Attorney

JS 44 (Rev. 12/07)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$102,561.00 in U.S. Currency

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bruce C. Smith, Phone: (619) 546-8266
USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893

Attorneys (If Known)
**'19 CV 2096 BEN BGS**

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 365 Personal Injury - Product Liability | [X] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** / [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting / [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations / **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare / [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights / [ ] 550 Civil Rights | [ ] 463 Habeas Corpus - Alien Detainee | | |
| | [ ] 555 Prison Condition | [ ] 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. Section 881
Brief description of cause:
Narcotics trafficking

### VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes  [X] No

### VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 11/01/2019
SIGNATURE OF ATTORNEY OF RECORD: s/ Bruce C. Smith

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## VERIFICATION

I, Scott Henderson, state and declare as follows:

1. I am an officer of the San Diego Police Department and a Task Force Officer, assigned to a San Diego Integrated Controlled substances Task Force, Team 8, and am one of the task force officers assigned to this investigation.

2. I have read the foregoing Complaint For Forfeiture and know its contents.

3. The facts set forth in the Complaint For Forfeiture are based upon my own knowledge or were facts furnished to me by other United States federal, state, or local law enforcement personnel, civilian witnesses, or other official Government sources.

Based on this information, I believe the allegations in the Complaint For Forfeiture to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on October 29, 2019.

SCOTT HENDERSON, TFO
NTF TEAM 8